**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION**

| | | |
|---|---|---|
| Niki White, as Independent Administrator of Estate of Tanicialle Brown, | ) ) ) | |
| *Plaintiff,* | ) ) | |
| | ) | Case No. 3:21-cv-50094 |
| v. | ) ) | |
| | ) | Magistrate Judge Lisa A. Jensen |
| Douglas Powell, *et al.*, | ) ) | |
| *Defendants.* | ) ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

For the following reasons, Defendants' motion for summary judgment [170] is granted in part and denied in part.[1]

**I. Background**

Plaintiff Niki White, as independent administrator of the Estate of Tanicialle Brown, filed this suit against Douglas Powell, T1 Transportation, Inc., and FedEx Ground Package Systems, Inc. ("Defendants") alleging claims of negligence and wrongful death following a motor vehicle collision on January 11, 2020. Compl., Dkt. 25; Jt. Stmt. Facts ¶ 8, Dkt. 169. On that date, Brown was traveling Eastbound on I-90. Jt. Stmt. Facts ¶ 8, Dkt. 169. Powell, operating a tractor-trailer owned by his employer, T1, was also traveling Eastbound behind Brown. *Id.* ¶ 10. Powell was employed by T1, an independent contractor that provides services to FedEx. Powell's Answer at 5, Dkt. 33; T1's Answer at 5–6, Dkt. 34; FedEx's Answer at 6, Dkt. 35. On the date of the incident, Powell was an agent of FedEx. *Id.*

---

[1] The parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings pursuant to 28 U.S.C. § 636(c). Dkt. 58.

At approximately 1:10 a.m., Brown's vehicle was in the right-most travel lane of the interstate. Pl.'s Resp. ¶ 13, Dkt. 177. Defendants' expert and the crash reconstruction report indicate that Brown's vehicle was either stopped or moving slowly when Powell collided with the rear of her vehicle in the right-most lane. Wiechel's Dep. pg. 115, Dkt. 183-6; Report at 5, Dkt. 171-2; Pl.'s Resp. ¶17, Dkt. 177. The parties do not dispute that Powell did not have any issues controlling his vehicle in the 60 seconds leading up to the collision. Pl.'s Resp. ¶ 46, Dkt. 177. Additionally, Powell did not attempt to brake prior to the collision and did not change lanes, swerve, or attempt any other evasive maneuvers. Pl.'s Resp. ¶ 21, Dkt. 177; Def.s' Resp. ¶7, Dkt. 191.

After the collision, Powell stopped his truck half a mile down the road and got out. Pl.'s Resp. ¶19, Dkt. 177. Powell testified that he inspected his truck for approximately 30 seconds before walking to Brown's vehicle. Powell's Dep. pg. 157, Dkt. 171-4. Powell was the first witness at the scene of the collision. Pl.'s Resp. ¶ 25, Dkt. 177. Powell testified that he called 9-1-1 when he approached Brown's vehicle. Powell's Dep. pgs. 39, 158, Dkt. 171-4.[2] Powell found the driver's door open and the dome light briefly illuminated, but he did not see anyone in the driver's seat. Def.s' Resp. ¶ 18, Dkt. 191. Powell testified that he did not think to look down on the ground initially because he was looking inside the vehicle instead. Powell's Dep. pgs. 162–64, Dkt. 171-4.

Powell used a flashlight to search around the vehicle for the driver. Def.s' Resp. ¶ 19, Dkt. 191. Powell testified that he walked along the ditch, behind the vehicle, and in the road. Powell's Dep. pgs. 160–60, Dkt. 171-4. When Powell returned to the vehicle, he looked down and discovered Brown on the ground outside of the driver's door with her right foot stuck inside the vehicle. Def.s' Resp. ¶ 20, Dkt. 191; Powell's Dep. pg. 162, Dkt. 171-4. Brown's eyes were closed

---

[2] Powell also testified that a screen shot of his phone call log did not reflect the 9-1-1 call, but he was unsure why.

and there was nothing to suggest she was alive. Pl.'s Resp. ¶ 28, Dkt. 177. Brown was not moving, moaning, or breathing. Pl.'s Resp. ¶ 28, Dkt. 177. Powell checked for Brown's pulse and could not feel anything, but he was unsure if he checked her pulse correctly. Pl.'s Resp. ¶ 29, Dkt. 177.

Illinois State Police Trooper Renne arrived on scene at approximately 1:30 a.m. and found Brown unconscious, with no pulse, laying outside of the driver's door, partially under the vehicle, with her legs pinned in the door. Pl.'s Resp. ¶ 30, Dkt. 177. Brown was pronounced dead at 1:44 a.m., shortly after the arrival of emergency responders. Pl.'s Resp. ¶31, Dkt. 177; Autopsy Report at 9, Dkt. 171-10. According to the autopsy report, Brown died of blunt force trauma of the head, neck, and chest. Autopsy Report at 9, Dkt. 171-10.

The parties agree that at the time of the collision, it was raining, and the road was wet and very dark with no source of street lighting. Pl.'s Resp. ¶¶ 16, 45, Dkt. 177; Def.s' Resp. ¶¶ 4–5, Dkt. 191. The parties also agree that the posted speed limit where the collision occurred was 70 miles per hour. Pl.'s Resp. ¶ 48, Dkt. 177. The parties dispute how fast Powell was driving before the collision, but it was between 60 and 70 miles per hour. Pl.'s Resp. ¶18, Dkt. 177; Pl.'s Add. Facts ¶3, Dkt. 183. Powell's written statement prepared shortly following the collision stated he was traveling between 65 to 70 miles per hour. Dkt. 171-2 at pg. 40. However, Powell testified at his deposition that he was traveling between 60 and 65 miles per hour. Powell's Dep. at pg. 218, Dkt. 171-4.

The parties also dispute whether Brown had any lights on and whether Powell saw Brown's vehicle before the collision. Powell provided the following written statement to an Illinois State Trooper approximately two hours after the collision:

> I was traveling east bound on I-90 in Illinois. My speed was between 65-70 mph. I was in the far right lane. I think I saw a car ahead of me, I don't know for sure if I saw its lights or what I saw was a different vehicle. I don't remember seeing it not moving. I thought it was. The next thing I remember is hitting the vehicle. I saw

3

> lights just before I hit the vehicle. All of a sudden I was on top of it, or right in front of me. It was like the lights were there and then they weren't – then they were. The hood on my truck flew up. I couldn't see anything, I could tell the vehicle that I hit moved onto the right shoulder. I held my truck and moved to the right shoulder.

Dkt. 171-2 at pg. 40.

Plaintiff also relies on a video recorded conversation that Powell had with a FedEx representative, which was taken at the scene of the collision. Dkt. 189. In the video, Powell responds to the FedEx representative's question by confirming that Brown's taillights and headlights were on.[3] Pl.'s Stmt. of Add. Facts ¶ 10, Dkt. 183. However, it is difficult to hear the portion of the conversation that immediately follows this statement because of the background noise in the video. Defendants disagree that the video supports Powell's statement and instead rely on Powell's deposition testimony. Def.s' Resp. ¶ 10, Dkt. 191.

Powell testified at his deposition that his written statement was not an accurate reflection of what occurred before the collision. Powell's Dep. at pgs. 178, 182–83, Dkt. 171-4. Powell testified that he was "shook up" after the collision and that it was not until weeks or months later that he was able to understand what really occurred. Powell's Dep. at pgs. 180, 182–83, Dkt. 171-4. Powell testified that he did not see Brown's vehicle, or any lights on her vehicle, before impact. Powell's Dep. at pg. 230, Dkt. 171-4. Powell explained that the taillights he saw were farther down the road from where the collision occurred and that the lights he saw before impact were his headlights reflecting on Brown's vehicle. Powell's Dep. at pg. 179–80, Dkt. 171-4.

Photographs from the law enforcement inspection of Brown's vehicle following the collision revealed that Brown's vehicle was in park, the lights were in the on position, the hazard lights were in the off position, and the driver's side seatbelt was unbuckled. Pl.s' Resp. ¶¶ 23–24,

---

[3] In response to Plaintiff's reliance on Powell's statement in the video, Defendants state that the video was not produced to Defendants. Def.s' Reply at 12, Dkt. 178. However, Defendants do not ask that the video be stricken or argue that this Court cannot consider it.

4

Dkt. 177; Adam Fogarty Report at pg. 21, Dkt. 171-7. Illinois State Police Trooper Moreno, the crash reconstruction officer, testified that he inspected Brown's vehicle after the collision, arriving on scene at approximately 2:53 a.m. Moreno Dep. pg. 10, Dkt. 171-3. He opined that because Brown's taillights revealed the presence of "hot shock," this indicated that her taillights were on at the time of the collision. *Id.* pg. 16. Trooper Moreno did not inspect Brown's headlights to determine if they were on, but the dashboard indicated they were in the on position. *Id.* pg. 73.

Plaintiff filed a third amended complaint alleging that Powell was negligent by driving at a high and dangerous rate of speed, failing to keep his vehicle under control and within its travel lane, keep a proper lookout, stop or slow down when a collision was imminent, and give Plaintiff an audible warning of impending danger, and operating his vehicle without sufficient rest. Jt. Stmt. Facts ¶ 13, Dkt. 169. Plaintiff also alleges that T1 and FedEx were negligent for failing to properly train Powell in the safe operation of its vehicles. Dkt. 25. Defendants filed a motion for summary judgment on all counts, and Plaintiff responded. Dkts. 169–172, 175, 177, 183, 193. Defendants filed a reply and were granted leave to file a surreply to Plaintiff's corrected statement of facts. Dkt. 178, 190–91.

## II. Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A material fact is one that affects the outcome of the suit." *Fidlar Technologies v. LPS Real Estate Data Solutions, Inc.*, 810 F.3d 1075, 1079 (7th Cir. 2016) (quotation marks and citation omitted). "A genuine issue exists as to any material fact when the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

5

The movant must either demonstrate "an absence of evidence supporting an essential element of the non-moving party's claim" or present "affirmative evidence that negates an essential element of the non-moving party's claim." *Hummel v. St. Joseph Cnty. Bd. of Comm'rs*, 817 F.3d 1010, 1016 (7th Cir. 2016) (citation omitted). In response, the non-movant "must make a sufficient showing on every element of his case on which he bears the burden of proof; if he fails to do so, there is no issue for trial." *Yeatts v. Zimmer Biomet Holdings, Inc.*, 940 F.3d 354, 358 (7th Cir. 2019) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

When deciding a motion for summary judgment, the Court must view the record in the light most favorable to the non-moving party and draw all reasonable inferences in favor of the non-moving party. *Smith v. Crounse Corp.*, 72 F.4th 799, 804 (7th Cir. 2023). Summary judgment is appropriate only when the record as a whole establishes that no reasonable jury could find for the non-moving party. *Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 692 (7th Cir. 2000).

### III. Discussion

At the outset, the Court must address the parties' briefing. "On summary judgment, the Court limits its analysis of the facts to the evidence that is presented in the parties' Local Rule 56.1 statements. To adequately dispute a statement of fact, the opposing party must cite specific support in the record; an unsubstantiated denial or a denial that is mere argument or conjecture is not sufficient to create a genuinely disputed issue of material fact." *Kirsch v. Brightstar Corp.*, 78 F. Supp. 3d 676, 697 (N.D. Ill. 2015). Many of Plaintiff's facts are not supported by the records cited in support. Accordingly, the Court will state the fact as it exists in the record provided. Additionally, briefing of the issues from both sides was often unclear, undeveloped, and

unsupported by authority. Accordingly, this Court will hold the parties to their respective burdens as outlined above in ruling on the motion.

Defendants seek summary judgment on the basis that Plaintiff has failed to: (1) properly plead and prove negligent training against T1 and FedEx; (2) show that Brown suffered conscious pain and suffering after the collision or that Plaintiff is entitled to other damages under the Survival Act; (3) show Defendants owed a duty to Brown and breached that duty; and (4) show that Defendants' conduct was the proximate cause of the collision. The Court will address each argument in turn.

## A. Negligent Training

In Counts III and V, and as incorporated by reference in Counts IV and VI, of her third amended complaint, Plaintiff alleges that it was the duty of T1 and FedEx, as "principal of its agent, servant and/or employee" Powell, "to exercise reasonable care for the safety of other persons upon said roadways, including the plaintiff." Compl. at 7, 10, Dkt. 25. Plaintiff alleges that T1 and FedEx were negligent through the actions of their agent under a *respondeat superior* theory but also because they "[c]arelessly and negligently failed [sic] properly train its driver/agents in the safe operation of its vehicles." Compl. at 7, 11, Dkt. 25.

Defendants seek judgment on the negligent training claims against them, arguing first that Plaintiff's complaint fails to state a claim for negligent training. Despite answering the third-amended complaint, Defendants argue for the first time at summary judgment that Plaintiff has failed to state a claim. Yet, Defendants offer no authority that they can raise a pleading defect at this stage of the case.

Nevertheless, Defendants also argue that there is no evidence that T1 or FedEx negligently trained Powell or that negligent training caused the collision and Brown's death. Illinois courts

have held that a claim for negligent training is "best analyzed under principles generally applicable to negligence cases." *Nat'l R.R. Passenger Corp. v. Terracon Consultants, Inc.*, 13 N.E.3d 834, 839 (Ill. App. Ct. 5th Dist. 2014).[4] Thus, to state a claim for negligent training, a plaintiff must allege the existence of a duty on the part of the employer to the injured party, a breach of that duty, and an injury proximately caused by the breach. *Id.* at 840; *Schramm v. Peregrine Transp. Co., LLC*, No. 3:22-CV-161-NJR, 2023 WL 2349346, at *4 (S.D. Ill. Mar. 3, 2023).

In their motion, Defendants do not dispute that T1 or FedEx owed a duty to train Powell. They dispute only whether they breached their duty and whether their breach proximately caused Brown's injuries. Plaintiff does not address any of the elements of her negligent training claims, and devotes only a single paragraph of her brief to argue that the following evidence supports her claims of negligent training against T1 and FedEx: the owner of T1 was in charge of the safety and training program despite having no experience in commercial trucking prior to taking ownership of T1 eight months prior to the collision in this case; T1's training program consisted of a series of online videos that drivers could watch on their phones, but T1 was unable to produce any records of training materials or any record that Powell undertook any training while employed at T1; and the fact that Powell was driving at an excessive speed for the weather and road conditions according to FedEx guidelines, industry standards, and federal motor carrier regulations. *See* Pl.'s Resp. at 4–5, Dkt. 175.

Plaintiff seems to argue that as a result of T1 and FedEx's failure to properly train Powell, he operated his tractor-trailer in an unsafe manner by driving too fast for conditions. Yet, Plaintiff points to no evidence indicating that Powell was not properly trained. Plaintiff cites to T1's

---

[4] This case is in federal court based on diversity jurisdiction pursuant to 28 U.S.C. § 1332(a). A federal court hearing a case under diversity jurisdiction must apply the substantive law of the state in which it sits. *Jean v. Dugan*, 20 F.3d 255, 260 (7th Cir. 1994) (citing *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 78 (1938)). The parties do not dispute that Illinois substantive law applies.

inability to produce any record that Powell undertook training at T1, but the deposition testimony Plaintiff cites in support makes no mention of Powell, let alone his training records or Defendants' inability to produce them. *See* Pl.'s SOF ¶17, Dkt. 183. T1's owner is merely testifying that T1 does onsite training with its drivers and that the tracking of completed training could be done in multiple ways. *See* St. Ore's Dep. pgs. 54–56, Dkt. 183-9. Plaintiff also does not point to any discovery requests where Defendants were unable to produce training records for Powell. In fact, Powell testified at his deposition that he participated in safety training while employed at T1. Powell's Dep. pg. 223, Dkt. 171-4. Plaintiff claims that T1's owner lacked experience but points to no evidence indicating that his lack of experience resulted in negligent training to his drivers. Moreover, Plaintiff does not even reference any evidence relating to FedEx's alleged breach of its duty to train Powell or how that breach caused Brown's death.

Instead, Plaintiff argues that despite industry standards that required Powell to reduce his speed, he continued to drive close to 70 miles per hour despite the wet and very dark road. Plaintiff points to the federal motor carrier safety regulations, which state that a driver should reduce speed when hazardous conditions exist that adversely affect visibility or traction, along with the Model Commercial Driver License Manual and internal FedEx training guidelines, which state that a driver should reduce speed by one-third when roads are wet. Def.s' Resp. ¶ 6, Dkt. 191. It is undisputed that at the time of the collision it was raining, and the road was wet and very dark with no source of street lighting. The posted speed limit was 70 miles per hour, and Powell was driving between 60 and 70 miles per hour before the collision. However, Plaintiff offers no authority to support her assertion that Powell's speed alone is evidence that he was "not properly trained and provides a causal link between that failure to train and the damages sustained by Brown." Pl.'s Resp. at 5, Dkt. 175. Furthermore, despite Plaintiff's reliance on the regulations and policies

9

identified above, she points to no evidence indicating that T1 or FedEx failed to train or negligently trained Powell on these policies. The evidence Plaintiff points to indicating that Powell was driving too fast for conditions shows only that Powell disregarded these policies, not that he was not properly trained on them.

Plaintiff, as the nonmoving party, can defeat Defendants' motion for summary judgment only if she presents "definite, competent evidence to rebut the motion." *Vukadinovich v. Bd. of Sch. Trustees of N. Newton Sch. Corp.*, 278 F.3d 693, 699 (7th Cir. 2002) (citation omitted). Plaintiff "must make a sufficient showing of evidence for each essential element of its case on which it bears the burden at trial." *Kampmier v. Emeritus Corp.*, 472 F.3d 930, 936 (7th Cir. 2007) (citing *Celotex*, 477 U.S. at 322–23). As such, summary judgment "is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003) (citation omitted).

Plaintiff has not provided such evidence here. The evidence Plaintiff points to falls short of creating a genuine dispute of material fact that T1 and FedEx negligently trained Powell and that this negligent training caused Brown's death. *See Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994) ("[I]f the non-movant does not come forward with evidence that would reasonably permit the finder of fact to find in her favor on a material question, then the court *must* enter summary judgment against her.") (emphasis in original). "It is not our function to scour the record in search of evidence to defeat a motion for summary judgment; we rely on the nonmoving party to identify with reasonable particularity the evidence upon which he relies." *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996). Therefore, Defendants' motion for summary judgment as to Plaintiff's claims for negligent training in Counts III – VI is granted.

**B. Pain and Suffering**

In Counts I, III, and V of the third-amended complaint, Plaintiff seeks damages under the Survival Act for: "(i) decedent's pain and suffering; (ii) Plaintiff's costs for decedent's medical expenses; (iii) Plaintiff's costs for decedent's burial; and (iv) Plaintiff's loss of support, society, and companionship." Jt. Stmt. Facts ¶ 12, Dkt. 169. The Survival Act, 755 ILCS 5/27-6, allows a decedent's representative to maintain those common law or statutory actions which had already accrued to the decedent prior to her death.

As to Plaintiff's damages for Brown's pain and suffering, the parties agree that to recover, Plaintiff must show that Brown consciously experienced pain and suffering before her death. *See Kohler v. CRST Expedited, Inc.*, No. 21-CV-1359-JPG, 2023 WL 3585312, at *2 (S.D. Ill. May 22, 2023) ("To recover under the Illinois Survival Act, which allows for the recovery of damages suffered prior to death, it must be shown that the decedent consciously experienced pain and suffering.") (citation omitted). "Illinois law requires actual evidence that the decedent was conscious, not just speculation or suggestion that the decedent was conscious and suffered pain." *Johnson v. Lyons*, 2021 Ill. Cir. LEXIS 109, *5.

Defendants argue that summary judgment should be granted in their favor because Plaintiff points only to her own speculation that Brown was conscious after the collision. This Court agrees. Plaintiff relies on Powell's testimony, the only witness immediately after the collision, arguing that it provides "strong circumstantial evidence that Brown was alive for some period of time following the crash." Pl.'s Resp. at 5, Dkt. 175. Plaintiff argues that because Powell did not see Brown until searching around the car and in the roadway, and because no other person was at the scene that could have moved Brown, a "reasonable conclusion to be drawn from Powell's testimony is that Brown was conscious and moving under her own volition for the time period

between the [vehicle] coming to rest and Powell finding her in the road after searching the area and returning to the [vehicle]." Pl.'s Resp. at 6, Dkt. 175.

However, Plaintiff admits that when Brown was found at the scene, she was laying on the ground outside the driver's door with her leg pinned in the door. Pl.'s Resp. ¶ 30, Dkt. 177. Plaintiff does not explain how Brown could be both pinned to her vehicle and yet moving around under her own volition. "While the court must draw inferences in favor of plaintiff[], the court is not constrained to draw every possible inference; rather, only those inferences that are reasonable." *Keller v. Samuel*, No. 92 C 2999, 1994 WL 577212, at *3 (N.D. Ill. Oct. 18, 1994).

In reading Powell's testimony, he makes clear that he did not initially see Brown because he was looking inside the vehicle and not on the ground. Powell's Dep. pgs. 162–64, Dkt. 171-4. Powell also testified that when he approached Brown, her eyes were closed, she was not moving, moaning, or breathing, and he could not feel her pulse. Pl.'s Resp. ¶¶ 28–29, Dkt. 177. Other than Powell's testimony, Plaintiff points to no other evidence that Brown was conscious following impact.

The forensic pathologist conducting the autopsy did not opine as to Brown's consciousness. Autopsy Report at 9, Dkt. 171-10. But, the autopsy report reveals that Brown died of blunt force trauma of the head, neck, and chest. *Id.* Such injuries are often associated with an instant loss of consciousness. *See* § 3:59. Pain and suffering—Showing of conscious pain and suffering, 1 Stein on Personal Injury Damages Treatise § 3:59 (3d ed.) (noting that relevant to the question of conscious pain and suffering is the "[n]ature of injury, such as severance of artery or blood vessel, as compared with injury associated with instant loss of consciousness, such as skull and brain injury or massive injury to vital organ, decapitation, etc."); *see generally Leibfried v. Caterpillar, Inc.*, No. 20-CV-1874, 2023 WL 7284795, at *7 (E.D. Wis. Nov. 3, 2023) (evaluating the nature

of the injury as relevant to whether decedent remained conscious following the accident). Although medical testimony is not required to establish conscious pain and suffering, Plaintiff must point to actual evidence, "not just speculation or suggestion," that Brown was conscious and suffered pain. *Johnson*, 2021 Ill. Cir. LEXIS 109, *5; *see Murphy v. Schneider Nat. Carriers, Inc.*, No. 04-1280, 2006 WL 2640212, at *2 (C.D. Ill. Sept. 12, 2006). Plaintiff fails to point to such evidence.

Defendants also argue that the Survival Act does not provide recovery for Brown's medical and burial expenses or loss of support, society, and companionship. The Survival Act has been interpreted to allow only for "the recovery of damages for injury sustained by the deceased up to the time of death." *Rodgers v. Cook Cnty.*, 998 N.E.2d 164, 172 (Ill. App. Ct. 1st Dist. 2013); *see also Murphy v. Martin Oil Co.*, 308 N.E.2d 583, 587 (Ill. 1974) (referring to survival-action damages of loss of earnings, medical expenses, pain and suffering, and property damage sustained up to the time of death).

Plaintiff does not respond to Defendants' argument or cite any authority demonstrating she is entitled to these damages under the Survival Act. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) (explaining that failing to respond to an argument in a response brief results in forfeiture). Although the Survival Act allows Plaintiff to recover damages for medical expenses incurred up to Brown's death, Brown was pronounced dead shortly after the arrival of emergency responders to the scene of the collision and Plaintiff points to no evidence that any medical expenses were incurred before her death. *See Rodgers*, 998 N.E.2d at 172 ("In a typical Survival Act claim, the representatives of the decedent would have a cause of action for medical expenses and pain and suffering of the decedent up to the date of death.").

Additionally, Plaintiff makes no argument that the Survival Act allows her to recover for burial expenses or loss of support, society, and companionship.[5] *See Harrison v. Burlington N. R. Co.*, 750 F. Supp. 316, 321–22 (N.D. Ill. 1990) (finding that the estate of a decedent could not recover for funeral expenses under the Survival Act); *Wyness v. Armstrong World Indus., Inc.*, 546 N.E.2d 568, 571 (Ill. 1989) ("A survival action allows for recovery of damages for injury sustained by the deceased up to the time of death; a wrongful death action covers the time after death and addresses the injury suffered by the next of kin due to the loss of the deceased rather than the injuries personally suffered by the deceased prior to death."). Because Plaintiff has not shown that she is entitled to recover any damages for her Survival Act claims, summary judgment is granted in favor of Defendants on Counts I, III, and V.

## C. Duty and Breach

Defendants argue that they owed no duty "to avoid Plaintiff's hazardous, illegally parked vehicle with no warning lights on an unlit highway" and that such a duty "should not be imputed to the Defendant driver in this case because it was not a foreseeable consequence of any conduct of Douglas Powell." Def.s' Mt. at 6, Dkt. 172.

In Illinois, a plaintiff asserting a common law negligence claim "must establish (1) the existence of a duty owed by the defendant to the plaintiff, (2) a breach of that duty, and (3) an

---

[5] The Court notes that Plaintiff may still seek recovery for loss of support, society, and companionship in her Wrongful Death Act claims. *See Spence v. Staras*, 507 F.2d 554, 557 (7th Cir. 1974) (stating that the Wrongful Death Act allows recovery for pecuniary losses incurred by the decedent's next of kin due to the decedent's death); *Turner v. Williams*, 762 N.E.2d 70, 77 (Ill. App. 2d Dist. 2001) (finding that loss of society, including deprivation of love, companionship, and affection from the deceased person, was within the scope of pecuniary losses under the Wrongful Death Act). However, any recovery for burial expenses would be under a common-law cause of action. *See Sanders v. Schultz*, 170 N.E. 2d 163 (Ill. 1960) (finding damages for medical and funeral expenses not recoverable under the Wrongful Death Act but allowing an independent cause of action to recover such expenses); *Baez v. Rosenberg*, 949 N.E.2d 250, 258 (Ill. App. 1st Dist. 2011) ("Illinois recognizes a common-law cause of action that can be brought against a tortfeasor either by the decedent's estate or the surviving spouse for funeral bills incurred as a result of the defendant's tortious conduct.").

injury proximately caused by that breach." *Choate v. Ind. Harbor Belt R.R. Co.*, 980 N.E.2d 58, 64 (Ill. 2012). To allege the existence of a duty, a plaintiff must point to "a relationship between the defendant and the plaintiff such that the law imposes on the defendant an obligation of reasonable conduct for the benefit of the plaintiff." *Id.* Whether a duty exists is a question of law. *Kane v. Loyola Univ. of Chicago*, No. 22 CV 6476, 2024 WL 1157396, at *14 (N.D. Ill. Mar. 18, 2024) (citing *Bruns v. City of Centralia*, 21 N.E.3d 684, 688–89 (Ill. 2014)).

Defendants argue that Plaintiff's negligence claims fail on the first element because they owed no duty to Brown. However, Defendants admit that "[i]t is bedrock law both in Illinois and elsewhere that all drivers have a duty to avoid motor vehicle collisions and to operate their vehicle in a safe and reasonable manner." Def.s' Mt. at 7, Dkt. 172 (citing *Keller*, 1994 WL 577212, at *3 ("In Illinois, drivers have a general duty to avoid colliding with other vehicles and pedestrians and to operate their vehicles in a reasonably safe manner.")). Powell, as a driver on the road, also had a general duty to "maintain a proper lookout for [ ] other vehicles" and a duty to decrease his speed when under hazardous weather or road conditions. *Alexander v. Yellow Cab Co.*, 609 N.E.2d 921, 924 (Ill. App. Ct. 1st Dist. 1993) (rejecting the defendants' argument that they owed no duty to the plaintiff); *Jimenez v. Perry*, 2017 IL App (1st) 162076-U, ¶ 34 (Ill. App. Ct. June 23, 2017); *Perez v. K & B Transp., Inc.*, 967 F.3d 651, 657 (7th Cir. 2020) (citing to the Illinois Vehicle Code); *Hickey v. Oliva*, No. 19-CV-03333, 2022 WL 846600, at *2 (N.D. Ill. Mar. 22, 2022) (citing 625 ILCS 5/11-601)).

In support of their proposition that they owed no duty to Brown, Defendants cite to an Alabama district court case applying Alabama state law. *See* Def.s' Mt. at 10–11, Dkt. 172 (citing *Barnett v. Franklin Logistics*, LLC, No. 2:05-CV-1922-RDP, 2006 WL 8436994 (N.D. Ala. July 25, 2006)). Defendants rely on *Barnett* to argue that Powell had no duty to anticipate Brown being

illegally stopped in the right-hand lane of traffic with no hazard lights on. However, Defendants offer no explanation as to why this Court should look to Alabama state law to decide the issues in this case. Regardless, *Barnett* is factually distinguishable where it was undisputed that the defendant driver was not speeding, and that the decedent's vehicle was stopped on the interstate with no lights on. Here, it remains disputed whether Powell was driving at a reasonably safe speed for the conditions and whether Brown's lights were on at the time of the collision.

Defendants also cite to *Rettig v. Heiser*, 996 N.E.2d 1220 (Ill. App. Ct. 4th Dist. 2013) to argue they owed no duty. Yet, *Rettig* did not conclude that the defendant driver had no legal duty. Instead, *Rettig* concluded that under the undisputed facts of that case the defendant driver did not breach his duty. *Rettig*, 996 N.E.2d at 1225. Accordingly, the Court does not find that *Rettig* supports Defendants' argument that they owed no duty to Brown. Because all drivers have a duty to maintain a proper lookout for other vehicles, decrease their speed when there are hazardous weather or road conditions, and avoid colliding with other vehicles, Defendants' argument that they owed no duty to Brown fails.

To the extent that Defendants rely on *Rettig* to support their argument that Powell did not breach his duty to Brown, *Rettig* provides no such support. In *Rettig*, the critical facts were undisputed that the defendant driver was not following too closely or driving too fast for conditions, and he did not have sufficient time to stop to avoid the vehicle in front of him in a muti-vehicle crash. *Rettig*, 996 N.E.2d at 1225. Here, the facts relevant to determining whether Powell's driving breached his duty of care remain in dispute.

"[Q]uestions of proper lookout and speed appropriate to conditions are generally questions for the jury to decide." *O'Brien v. Hertl*, 606 N.E.2d 225, 228 (Ill. App. 1st Dist. 1992). "Questions of negligence, due care and proximate cause are ordinarily questions of fact for a jury to decide,

and become questions of law only when the facts are not only undisputed but are also such that there can be no difference in the judgment of reasonable men as to the inferences to be drawn from them." *Id.* Accordingly, summary judgment in Defendants' favor is appropriate only if the record as a whole establishes that no reasonable jury could find that Powell breached his duty or that his conduct was the proximate cause of Brown's injuries. *See Michas*, 209 F.3d at 692. The Court finds that the record raises genuine issues of material fact, and thus, summary judgment for Defendants is improper.

Here, Plaintiff argues that the evidence shows Powell breached his duty of care by driving in excess of the maximum safe speed given the road and weather conditions, failing to keep a proper lookout for other vehicles, and failing to stop or change lanes to avoid a collision. As it relates to Powell's duty to drive at a speed appropriate to the conditions, it is undisputed that the posted speed limit was 70 miles per hour, and Powell was driving between 60 and 70 miles per hour before the collision. At the time of the collision, it was raining, and the road was wet and very dark with no source of street lighting. Additionally, Trooper Moreno testified that the weather conditions, including snow and ice, decreased visibility the night of the collision. Moreno's Dep. pgs. 18, 31, 38, Dkt.171-3.

Defendants rely on Powell's deposition testimony that he was driving between 60 and 65 miles per hour before the collision to argue that he was not driving at a dangerous rate of speed. Yet, given that it was raining, and the road was wet and very dark, a jury could conclude that even at 60 miles per hour, Powell was driving too fast for conditions. *See, e.g., Perez*, 967 F.3d at 657 (finding summary judgment inappropriate where the "appropriate speed under the circumstances is a fact-intensive question, highly contested by both sides, and the kind of reasonableness determination that is best suited for a jury"); *see also* 625 ILCS 5/11-601 (requiring a driver to

reduce speed when under hazardous weather or road conditions). Moreover, there is evidence indicating that Powell was driving 70 miles per hour before the collision. Accordingly, a jury could find that Powell failed to reduce his speed at all for the weather or road conditions. *See* 625 ILCS 5/11-601 ("The fact that the speed of a vehicle does not exceed the applicable maximum speed limit does not relieve the driver from the duty to decrease speed ... when special hazard exists with respect to pedestrians or other traffic or by reason of weather or highway conditions."). At this stage of the case, this Court is not deciding whether Powell breached his duty. However, viewing this evidence in the light most favorable to Plaintiff, a reasonable jury could find that Powell was driving too fast for conditions. *See, e.g., Turner v. Roesner*, 549 N.E.2d 1287, 1291–92 (Ill. App. 2d Dist. 1990) (denying summary judgment for the defendant driver, despite having only two seconds to react to a vehicle on the wrong side of the road, to let the jury determine whether he was driving too fast for conditions).

As it relates to Powell's duty to keep a proper lookout for other vehicles and stop or change lanes to avoid a collision, Defendants argue that any conclusion that Powell was negligent is purely speculative because he had no warning where Brown's vehicle was parked on the roadway with no lights on. However, there is conflicting evidence concerning whether Brown's lights were on. Powell's statements shortly after the collision indicate Brown had her lights on. And although Powell testified at his deposition that Brown's lights were off, an inspection of Brown's vehicle after the collision indicates her taillights were on. Additionally, Defendants' expert testified that under the conditions in this case, taillights would have been visible on the highway at one mile. Wiechel's Dep. pg. 179, Dkt. 183-6. He also testified that Powell may have been able to determine that he was closing in on Brown's vehicle from a distance of at least 1,000 feet. *Id.* pg. 226–27.

However, it remains undisputed that Powell did not attempt to brake or take any other evasive action prior to colliding with Brown's vehicle.

Again, it is for the jury, not this Court, to determine which version of events they find credible and whether Powell acted reasonably under the circumstances. If the jury finds that Brown's taillights were on and Powell should have seen them at a distance of 1,000 feet, they could find that Powell failed to keep a proper lookout for other vehicles and failed to take any evasive action when he first saw Brown's taillights to avoid colliding with her vehicle. Considering all the evidence along with all reasonable inferences in the light most favorable to Plaintiff, a reasonably jury could conclude that Powell was negligent in driving his vehicle too fast for conditions, failing to keep a proper lookout, and failing to stop or change lanes to avoid colliding with Brown's vehicle. Therefore, Defendants' motion for summary judgment as to whether they breached their duty to Brown is denied.

**D. Proximate Cause**

Lastly, Defendants argue that Plaintiff has failed to show that their conduct was the proximate cause of Brown's death. Defendants argue that Brown being illegally parked on the highway without any warning to other motorists was the sole proximate cause of her death, asserting that Powell merely created a condition in which the collision occurred. Defendants further argue that it was not reasonably foreseeable for Powell to anticipate a parked vehicle on the highway with no hazard lights.

Proximate cause has two distinct elements: cause-in-fact and legal cause. *Schultz v. St. Clair Cnty.*, 201 N.E.3d 1111, 1119 (Ill. 2022). A defendant's negligent conduct is the cause-in-fact of an injury if absent the defendant's conduct, the injury would not have occurred. *Id.* Legal cause involves an assessment of foreseeability, where the relevant inquiry is whether the injury is

19

of a type that a reasonable person would see as a likely result of his conduct. *First Springfield Bank & Tr. v. Galman*, 720 N.E.2d 1068, 1072 (Ill. 1999). "[I]t is fundamental in the law of negligence that there may be more than one proximate cause of injury, and that one is liable for its negligent conduct whether it contributed in whole or in part to the plaintiff's injury, so long as it was one of the proximate causes of injury." *Ray v. Cock Robin, Inc.*, 310 N.E.2d 9, 11 (Ill. 1974) (citations omitted).

Whether or not Powell's conduct was the proximate cause of Brown's death is ordinarily a question reserved for the trier of fact. *See Schultz*, 201 N.E.3d at 1119. "[P]roximate cause may be found as a matter of law when the facts are undisputed and only a single inference can be drawn from the facts." *Archibald v. Orbit Express, Inc.*, No. 3:18-CV-1101-MAB, 2020 WL 5237095, at *3 (S.D. Ill. Sept. 2, 2020). "[O]nly rarely are the facts so clear that the court can resolve the issue as a matter of law." *Palay v. United States*, 349 F.3d 418, 432–33 (7th Cir. 2003).

### 1. Cause in Fact

In arguing that they are entitled to summary judgment on this issue, Defendants admit that Plaintiff must establish that absent Powell's conduct, Brown's injuries would not have occurred. Defendants, relying on *Thompson v. Cnty. of Cook*, 609 N.E.2d 290 (Ill. 1993) and *Schultz*, 201 N.E.3d 1111, argue that Plaintiff cannot make this showing because Powell's conduct was "merely just a condition that made Brown's own negligence come to fruition." Def.s' Reply at 2, Dkt. 178.

However, the Court finds the cause vs. condition analysis inapplicable to this case. "The Illinois Supreme Court has reiterated that [this] analysis applies to cases in which injury is caused by the intervening acts of third parties." *Archibald*, 2020 WL 5237095, at *4 (internal quotation marks and citation omitted). Unlike the cases Defendants rely on to support the cause vs. condition analysis, here there is no third party or other condition. There is only Brown and Powell.

Defendants' reliance on the cause vs. condition analysis does not change this Court's evaluation of proximate cause. "As the Illinois Supreme Court explained, the cause/condition analysis is simply a variation of the traditional proximate cause test that has governed Illinois for the better part of this century." *Archibald*, 2020 WL 5237095, at *4 (internal quotation marks and citation omitted). "Regardless of what language is used, the cause in fact analysis ultimately boils down to whether absent the defendant's conduct, that injury still would have occurred." *Id.* (internal quotation marks and citation omitted).

Here, Plaintiff alleges that Powell's conduct in driving too fast for conditions, failing to keep a proper lookout for other vehicles, and failing to stop or change lanes to avoid a collision were the cause in fact of Brown's death. Recall that there is evidence indicating that Brown had her taillights on, that Brown's taillights would have been visible at one mile, and that Powell should have been able to determine that he was closing in on Brown's vehicle from a distance of at least 1,000 feet. While there is certainly conflicting evidence in the record, if the jury credits the above evidence, it could support the conclusion that if Powell had reduced his speed and kept a proper lookout, he could have taken evasive action, such as braking or changing lanes, in order to avoid colliding with Brown's vehicle. Powell rear-ended Brown's vehicle, and she died as a result of the injuries she sustained in the collision. *Archibald*, 2020 WL 5237095, at *7 (denying summary judgment where "Plaintiff has provided sufficient evidence that Defendant's negligence was at least a proximate cause of the complained-of injury"). As such, a reasonable jury could find that absent Powell's conduct, Brown's injury would not have occurred. *See, e.g., Turner*, 549 N.E.2d at 1293–94 (denying summary judgment for the defendant driver where a jury could infer that his speed was a proximate cause of a collision with a vehicle driving on the wrong side of the road).

## 2. Legal Cause

Defendants also argue that it was not reasonably foreseeable for Powell to anticipate Brown's vehicle parked on the highway with no hazard lights. Defendants argue that independent of Powell's conduct, Brown parked her vehicle on the roadway without any warning to other drivers and in doing so violated several sections of the Illinois vehicle code. However, Defendant's argument is a nonstarter.

"[T]he law is clear that conduct does not become an unforeseeable intervening cause solely because it violates the law." *Mack v. Ford Motor Co.*, 669 N.E.2d 608, 615 (Ill. App. 1st Dist. 1996). Even if Defendants are arguing that Brown's conduct in parking her vehicle on the roadway created an unavoidable collision, that does not make Powell's conduct immaterial. "[T]he unavoidable collision doctrine is instead a framework courts apply to evaluate whether the defendant breached his or her duty of care at all." *Scheiner v. Guffey*, No. 3:20-CV-00038-GCS, 2021 WL 5359587, at *4 (S.D. Ill. Nov. 17, 2021) (explaining that the unavoidable collision doctrine merely places a driver's actions during an accident into context and perspective). "Whether a defendant might otherwise have avoided the collision by refraining from speeding, adapting his or her speed to fit the weather and road conditions, or keeping a better lookout therefore all remain as pertinent questions to the proximate cause analysis." *Id.*

Moreover, evaluating whether Brown's conduct was negligent is a determination of comparative fault. Illinois recognizes a theory of modified comparative negligence where a plaintiff cannot recover damages if she is more than 50% at fault for her injuries. *Rankins v. Sys. Sols. of Kentucky*, No. 19-CV-3775, 2021 WL 5415148, at *1 (N.D. Ill. Nov. 19, 2021). However, the "question of whether the negligence of [Brown] was the sole proximate cause or a contributing cause of the injury is an issue for the jury to decide under principles of comparative negligence."

*Buchaklian v. Lake Cnty. Family Young Men's Christian Ass'n*, 732 N.E.2d 596, 603 (Ill. App. 2d Dist. 2000). Thus, Defendants arguments do not convince this Court that Brown's injuries were not of the type that a reasonable person would see as a likely result of Powell's conduct. *See Galman*, 720 N.E.2d at 1072 (finding the relevant inquiry of legal cause is whether the injury is the type of injury a reasonable person would see as a likely result of his conduct).

"Once a plaintiff presents evidence that he suffered the sort of injury that would be the expected consequence of the defendant's wrongful conduct, he has done enough to withstand summary judgment on the ground of absence of causation." *BCS Services, Inc. v. Heartwood 88, LLC*, 637 F.3d 750, 758 (7th Cir. 2011). Plaintiff has done so here. Viewing the evidence in the light most favorable to Plaintiff, a reasonable jury could find that Brown's fatal injuries resulting from a rear-end collision on a roadway were a likely result of Powell driving too fast for conditions and failing to keep a proper lookout. *See, e.g.*, *Scheiner*, 2021 WL 5359587, at *6 ("A reasonable jury could find that a reasonable person would foresee a collision with another driver as a result of speeding on wet road conditions.").

Therefore, because the Court cannot conclude on this record that no reasonable jury could find that Powell's alleged failure to reduce his speed, keep a proper lookout, and stop or change lanes to avoid a collision was a proximate cause of Brown's death, Defendants are not entitled to summary judgment on this issue.

### IV. Conclusion

For the reasons stated above, Defendants' motion for summary judgment [170] is granted in part and denied in part. Summary judgment is granted in favor of Defendants on all of Plaintiff's claims under the Survival Act in Counts I, III, and V. Additionally, summary judgment is granted in favor of Defendants T1 and FedEx on Plaintiff's claims for negligent training in Counts IV and

VI. Summary judgment is denied as to Plaintiff's negligence claims under the Wrongful Death Act in Counts II, IV, and VI.

Date: June 27, 2024                    By:

                                       Lisa A. Jensen
                                       United States Magistrate Judge