IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF ILLINOIS

WESTERN DIVISION

| | |
|---|---|
| Niki White, as Independent Administrator of the Estate of Tanicialle Brown, <br><br> Plaintiff, <br><br> v. <br><br> Douglas Powell, T1 Transport, Inc., and FedEx Ground Package Systems, Inc., d/b/a FedEx Ground, <br><br> Defendants. | Case No. 3:21-cv-50094 <br><br> Honorable Iain D. Johnston |

**MEMORANDUM OPINION AND ORDER**

In the early morning hours of January 11, 2020, Tanicialle Brown was tragically killed in a vehicle collision with a tractor trailer on I-90 in Rockford, Illinois. Third Amended Complaint [25]. Shortly thereafter, her estate brought this action against the driver of the tractor trailer Douglas Powell, his employer T1 Transport, Inc., and the contracting trucking company FedEx Ground (collectively, "Defendants"). *Id.*

**Background**

Initially, the complaint brought claims under the Survival Act, 755 ILCS 5/27-6, Wrongful Death Act, 740 ILCS 180/2, and common law negligence, including negligent training. Complaint [1]. The operative complaint is now the third amended complaint—submitted after White secured counsel—bringing substantially the same

claims, but with more specificity as to the conduct being alleged. Third Amended Complaint [25]. The Court has previously denied an attempt by White to add claims for negligent supervision in a fourth amended complaint. Dkt. 161. Moreover, the Court has previously partially granted a motion for summary judgment in favor of Defendants on the survivorship and negligent training allegations. Dkt. 197. Trial is now scheduled to begin on August 10, 2026, with only the facts surrounding Powell's negligence amid Brown's death left to decide. Dkt. 263.

Discovery has revealed that a dashcam, specifically a DriveCam (Lytx) video event data recorder ("VEDR")—designed to both record interior and exterior video as well as data surrounding any impacts—wasn't present in the cab of Powell's tractor trailer at the time of the collision despite prior assertions by T1 Transport that it should have been. Dkt. 277. The Court recently denied a motion for sanctions under Fed. R. Civ. P. 37(e), as one can't destroy what never existed. *Id.*

Late-game discovery has also uncovered the testimony and account of Nyla Wilson, a friend and coworker of Ms. Brown with whom Brown was speaking with on the phone at the time of the collision. Dkt. 274; Wilson dep. at 6:23-7:6 [280-1]. In part, Wilson testified at her deposition that while on the phone with Brown around the time of the collision, Brown said the words "[o]h my God" just before the phone call abruptly ended. Wilson dep. at 8:2-8:6. These are the last words Brown is known to have spoken.

This matter is now before the Court on cross-motions *in limine* seeking the admission (and exclusion) of testimony and evidence related to the dashcam and

2

Brown's final words. For the following reasons—which are premised on principles of party presentation—the motions *in limine* regarding the absence of the VEDR system [281 and 283] are granted in part and denied in part and Defendants' motion seeking the limited exclusion of Nyla Wilson's testimony [279] is denied.

**Legal Standard**

Absent exclusion by other rules, relevant evidence is generally admissible; irrelevant evidence is not. Fed. R. Evid. 402. Evidence is relevant if it has "*any* tendency to make a fact more or less probable than it would be without the evidence… and the fact is of consequence in determining the action. Fed. R. Evid. 401 (emphasis added). Put another way, to be admissible, evidence must be both probative and material. *United States v. Gomez*, 463 F.3d 845, 853 (7th Cir. 2014). One test of relevance is whether "its exclusion would leave a chronological and conceptual void in the story." *United States v. Woolsey*, 535 F.3d 540, 549 (7th Cir. 2008) (quoting *United States v. Westbrook*, 125 F.3d 996, 1007 (7th Cir. 1997)). Nonetheless, relevant evidence may be excluded if its probative value is "*substantially* outweighed" by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 403 (emphasis added); *Arrington v. City of Chicago*, 147 F.4th 691, 703 (7th Cir. 2025).

The Court has broad discretion in ruling on motions *in limine* under its inherent authority to manage trials. *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984). Motions *in limine* "eliminate from further consideration evidentiary submissions that … clearly would be inadmissible for any purpose." *Jonasson v. Lutheran Child & Fam.*

3

*Servs.*, 115 F.3d 436, 440 (7th Cir. 1997). Rulings on motion *in limine* are subject to change. *Luce*, 469 U.S. at 41-42. A court should defer ruling on a motion *in limine* until trial if evidence "cannot be evaluated accurately or sufficiently" at the pre-trial stage. *Jonasson*, 115 F.3d at 440.

**Absence of VEDR Dashcam**

White argues that the VEDR dashcam's absence is relevant for three primary reasons: (i) Powell knew that a dashcam wasn't monitoring his conduct, (ii) Powell knew that a dashcam couldn't contradict his post-collision reports, and (iii) T1 Transport and FedEx had previously attested that the vehicle was equipped with a VEDR dashcam. White argues that this testimony and evidence bears directly on Powell's knowledge, the conditions under which he was driving, the weight and reliability of his post-collision accounts, the reasonableness of his conduct, and T1 Transport and FedEx's credibility.

Defendants respond, contending that the last of these considerations can't be relevant, as there's no direct negligence claim against either T1 Transport or FedEx. Moreover, they argue that "[a]ny discussion of the VEDR system or the expectation that the tractor be equipped with one will simply confuse and waste the jury's time with questions that are irrelevant to the only remaining issues in this matter[.]" Defendants' Brief [281] at 2.

To the extent that the absence of a VEDR system in the cab is relevant to Powell's driving, alleged negligence in the collision, and inconsistent post-collision reports, the Court grants White's motion *in limine* in part—and consequently denies

4

Defendants' in part—and will allow for the introduction of testimony related to the lack of VEDR in Powell's cab.

It's uncontested—or has been determined by this Court—that Powell was driving a substitute truck at the time of the collision, that a VEDR system was present in Powell's *normal* truck, and that no VEDR system was present in Powell's substitute truck, which was involved in the collision with Brown. Based on these facts, a reasonable jury could make at least the following reasonable inferences: (i) Powell knew that there was no VEDR system in his substitute truck; (ii) Powell knew he wasn't being monitored—and couldn't be monitored—by either T1 Transport or FedEx during his trip on the night of the collision; (iii) Powell could—at least theoretically—drive more aggressively, distractedly, or otherwise less attentively than he would when actively monitored by a VEDR system, without fear of consequence from his employer; and (iv) Powell's account of the collision—either immediately following the collision or during his deposition—was influenced by his knowledge that no independent recording existed to contradict him.

Of course, a reasonable jury could also *reject* any or all of these inferences after hearing Powell's testimony at trial. Either way, the lack of a VEDR dashcam is both material—making Powell's negligence more probable, and probative—Powell's negligence being of foremost consequence in determining liability.

Next, contrary to Defendants position, in its discretion, the Court finds this relevance is not substantially outweighed by unfair prejudice, nor would its admission be misleading to the jury. To the contrary, the absence of a dashcam is just

5

a fact. That there was no dashcam present in the cab of the truck will not take long to elicit and will potentially be of great benefit to the jury in making inferences, and ultimately factual determinations.[1]

On the other hand, as to T1 Transport and FedEx, the Court agrees with Defendants that the absence of a dashcam is irrelevant to the vicarious liability for which they are being haled to court. Although the Court agrees that the lack of a dashcam—when put next to the representations made by T1 Transport attesting to the presence of a dashcam—are damaging to T1 Transport's credibility, the credibility of T1 Transport and FedEx is not at issue—at least at this time. Rather, only Powell's actions and Brown's actions leading up to and at the time of the collision are on trial. Former T1 Transport owner Travis St. Ores' false statements on paperwork to FedEx doesn't make Powell more or less likely to have been negligent.[2]

Succinctly, White will be allowed to do the following three things at trial:

1. Elicit testimony from Powell as to the presence of a dashcam in his normal truck and the absence of a dashcam in his substitute truck.

2. Elicit testimony from Powell related to what impact (if any) the absent dashcam had on his driving leading up to and at the time of the collision.

3. Elicit testimony from Powell related to what impact (if any) the absent dashcam had on his post-collision reports to police and in court proceedings.

---

[1] Indeed, the Court is inclined to believe that a contrary finding, disallowing such testimony, would likely lead to more confusion than its Order today. Surely a jury in 2026 will know of dashcam technology and be aware of its ubiquitous presence on American roadways, particularly in commercial vehicles. Asking a jury to deliberate without so much as a passing mention of video evidence would be likely to raise more questions than it solves.

[2] Whether St. Ores could be properly impeached by his false statements is not the subject of these pending motions. Absent a good reason currently unknown to the Court, all kinds of scenarios exist in which St. Ores could be impeached with his false statements.

But—at this time and on this record—White may not present evidence of T1 Transport's false attestation that Powell's truck *was* equipped with VEDR nor any record of FedEx that indicated the erroneous belief that a dashcam was present. These items are simply irrelevant to Powell's alleged negligence. To that issue, Defendants' motion is granted in part and White's is denied in part.

That all being said, here's a word to the wise: despite the manpower expended on this issue by litigants and the Court alike, this trial and this case are *not* about a dashcam. It's about Powell's alleged negligence and Brown's alleged contributory negligence. Trial will not be permitted to delve into the merits of dashcam evidence and the collective failure of Defendants to have one in Powell's truck. The absence of a camera no longer matters to any extent outside the very limited use set forth above.

**Wilson's Deposition Testimony**

Defendants argue that Nyla Wilson's testimony as to Brown's presumed last words—"[o]h my God"—is not relevant and would only serve to confuse and mislead the jury because the Survival Act claims have been dismissed.[3] White counters that the words are relevant to Wilson's chronology of events on the phone call, beginning before Brown's car stalled, continuing to a statement about being out of gas, and ending upon the collision. Because the three words would serve some limited purpose in painting a full picture to the chronology of Wilson's account, and because they wouldn't confuse or mislead the jury, the motion is denied.

---

[3] White didn't seek to reinstate the Survival Act claim based on this new evidence.

The three words are admittedly of limited relevance. They serve merely to provide a complete version of events from Wilson on the night of the collision: beginning with the call, which culminated in those words, the collision, and Brown responding to the scene of the collision. But limited relevance is still relevant by the language of Fed. R. Evid. 401. Moreover, a jury can't be confused or misled by claims they don't know existed. A jury won't be provided with information about a Survival Act claim because one is not proceeding before them. There will be no improper connection for a jury to make. Essentially, a jury can't improperly attribute "[o]h my God" to Brown's pain and suffering, because they won't be asked to quantify Brown's pain and suffering.[4]

But White is advised to use this ruling carefully. The words are being allowed into evidence for the purpose of allowing Wilson to tell her full and complete story as a witness. They're not being allowed in to intentionally evoke an emotional reaction from the jury. This is a tragic case as the facts present them; there is no need for counsel to unnecessarily set out to pull any heart strings.[5]

---

[4] Additionally, as with n.1 above, the Court is inclined to believe it likely that a jury will be *more* confused by a version of events with the conclusion of the phone call artificially spliced out and Wilson asked to pretend as if the call terminated either without words or before the collision. Wilson would be asked to testify to her story, but not the full story, with the call just apparently ending but her continuing the drive to Brown's location on I-90 to give Brown gas anyway. Furthermore, it raises questions without answers. How did the call end? What was Brown doing after the call ended? Did Brown attempt to exit her vehicle after the call ended? Did Wilson know that a collision had occurred before she arrived on scene? These questions are avoided by simply permitting Wilson to provide her full story, including that Brown said "[o]h my God" before the call failed.

[5] Parties are directed to read *Young v. Corr. Healthcare Co., Inc.*, 721 F. Supp. 3d 1209 (N.D. Okla. 2024) in advance of trial for the Court's views on trial practice, particularly the use of rhetorical pathos, appeals to emotion, and emotional displays before a jury.

**Conclusion**

For the above reasons, the motions *in limine* related to VEDR systems are granted in part and denied in part. Defendants motion *in limine* seeking to bar portions of Nyla Wilson's testimony is denied.

Date: July 13, 2026                                          By:  _____
                                                                          Iain D. Johnston
                                                                          United States District Judge

9